## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

**In re:**

| | |
|---|---|
| **Abtin Vaziri** | **Case No. 25-12110-BFK** |
| **Debtor** | **Chapter 7** |

**Cyrus Amiri**

| | |
|---|---|
| **Plaintiff,** | **Adversary Case No._____** |
| **Vs.** | |

**Abtin Vaziri**

**Defendant/Debtor**

## COMPLAINT OBJECTING TO DISCHARGE

COMES NOW, Cyrus Amiri, a creditor in this case (the "Plaintiff"), through his undersigned counsel, and hereby files this complaint under 11 U.S.C Section 727(a) seeking the denial of the Debtor's discharge. In support of his complaint the Plaintiff alleges as follows:

## PARTIES

1. The Plaintiff, Cyrus Amiri, is a creditor in the Debtor's chapter 7 bankruptcy filing as a result of judgment obtained years prior to the Debtor's filing in the Loudoun General District Court.

2. The Defendant is the Debtor in this case who filed for chapter 7 bankruptcy relief with this court.

## **JURISDICTION AND VENUE**

3.   This court has jurisdiction over this adversary proceeding under 28 U.S.C. Section 1334 (a). This matter is a core proceeding under 28 U.S.C. Section 157(b)(2)(A). Venue is proper in this court under 28 U.S.C. Section 1409(a).

4.   The Plaintiff has standing to seek denial of defendant's discharge in this case pursuant to 11 U.S.C. Section 307 and 727( c).

## **FACTS**

5.   The Debtor previously filed a chapter 13 petition with this court on May 30, 2023 (Case No. 23-10896-KHK). During the course of the filing the Plaintiff objected to the confirmation of Debtor's case, and in fact sought dismissal of Debtor's chapter 13 case taking the position that the bankruptcy petition was filed in bad faith. Throughout the chapter 13 case the Plaintiff alleged that the Debtor's schedules and plan were riddled "with mistakes" namely:

- The Debtor had roughly $6500 in his bank account when he filed his bankruptcy petition and not $1300 as he disclosed in his schedules.

- The Debtor did not list a savings account that he had/has at Bank of America in his schedules.

- The Debtor listed the IRS on his schedules showing the debt as "unknown" when in fact he knew that he owed them roughly $10,000 when he filed his bankruptcy petition.

As for the more egregious omissions/falsehoods in Debtor's schedules, the Plaintiff

alleged the following as it pertained to Debtor's previously filed chapter 13 case:

- The Debtor did not disclose all of his creditors on the schedules. At the time

  of his filing the Debtor owed money to at least two individuals and likely his

  employer as well. These creditors were not listed on schedule E/F.

- The Debtor did not disclose all of his current monthly income during the six

  months preceding the bankruptcy filing. In addition to his income from

  work, which was disclosed on the means test, during that same period of

  time -the six months preceding the bankruptcy filing- the Debtor had

  deposits of nearly $54,000 in his bank account. Meaning, his monthly DMI

  was about $9,000 higher than what he disclosed on his means test form.

- The foregoing was not a fluke. In the year 2022 the Debtor took in deposits

  of about $70,000 -in addition to his salary- that were not disclosed on the

  Statement of Financial Affairs (the SOFA).

-  In the year 2023 the Debtor took in deposits of about $40,000 in addition to

  his earnings from work that were not disclosed on the SOFA.

- Schedule J filed by the debtor was patently false. The expenses were literally

  made up. Debtor was not paying $2500 in rent at the time of filing, there

  were no utility expenses, and the entertainment expenses were vastly

  downplayed. The Debtor at the time of his filing was not spending a mere

couple of hundred of dollars on entertainment, but rather, the debtor was spending thousands, upon thousands of dollars *typically, about 80 % of his paycheck* gambling. There was no health insurance expense at the time of filing. In short, schedule J was a complete fabrication. Moreover, the disclosure that debtor only had $2,457 in disposable income per line 23 on J was also fictitious.

- The Debtor faired no better when it came to his disclosure on SOFA. His income outside of his employment was not disclosed, despite being very substantial. Nor did Debtor disclose his gambling winning for the two years prior to filing. The Debtor did not disclose the payments made during the 90 days preceding the bankruptcy filing. The Debtor did not disclose his gambling loses. The Debtor did not disclose when he made his payments to his attorney. The Debtor did not disclose that he sold his previous marital home during the two-year preceding the bankruptcy filing.

6. During the course of the Debtor's chapter 13 filing the Plaintiff made the additional argument that the Debtor could have committed to a 100 percent plan without any "step-up" payment if he so wished. Debtor could have proposed a traditional 100 percent plan at the outset of the case. The Debtor could have proposed a plan that paid $4500 per month for 60 months for the simple fact that not only did his true monthly disposable income mandated that, but also

because he could easily afford it. Instead, the Debtor had to be dragged "kicking and screaming" into a 100 percent plan filing.

7.  Ultimately, the bankruptcy court was not persuaded that the Debtor's chapter 13 case was filed in bad faith because eventually (after filing three plans with the court) the Debtor had finally proposed a plan that would pay the creditors 100 percent on the dollar. As such, Plaintiff's motion to dismiss was denied, and objection to confirmation was overruled.

8.  The Plaintiff appealed the confirmation order to the District Court for for the Eastern District of Virginia. The Plaintiff lost. The ruling of the bankruptcy court was upheld.

9.  The Plaintiff subsequently appealed the ruling of the District Court to Fourth Circuit Court of Appeals (where it is currently pending) taking the position that a debtor begrudgingly filing a 100 percent plan does not give "carte blanche" to the Debtor to do as he pleases when it comes to his bankruptcy disclosures.

10. On or about January of 2025 the Debtor lost his job and ceased making payments to the chapter 13 trustee. In April of 2025 the chapter 13 trustee filed a motion to dismiss for payment default, and in May of 2025 the Debtor's chapter 13 case was dismissed.

11. On October 13, 2025 the Debtor filed the instant chapter 7 case with the

court. It appears that the present bankruptcy filing suffers from many of the infirmities that plagued the Debtor's prior chapter 13 case. The Debtor's schedule are not accurate, to-wit:

- The Plaintiff is skeptical that the Debtor's Bank of America checking and savings account were in fact both closed in April of 2025 as alleged on SOFA.

- The Debtor did not disclose his Visa Prepaid card where money was/is kept.

- The Debtor alleges on Schedule I that he has merely $300 in support from family. That statement is false. The support that Debtor was/is receiving from his family is far greater than what he disclosed.

- In response to SOFA question number five, all income, from all sources, during the year of the bankruptcy filing and the previous two years the Debtor failed to disclose that in 2023 he "earned" at least $40,000 from sources beyond his earning at work. Up until the middle/late 2023 the Debtor's bank statements reveal that there is money pouring into the bank account beyond his paychecks from his employer. Moreover, throughout 2024 and 2025 the Debtor is enjoying additional earnings from his investments in cryptocurrency/stocks as reflected by deposits being made into his bank account from entities such as Robinhood and Coinbase.

- The Debtor filed the instant chapter 7 case in October of 2025. As such he was obligated to disclose all of his current monthly income (his CMI) for the six months preceding the filing. The Debtor failed to do so. In April of 2025 the Debtor earned at least $1400 from his Robinhood investments; in May of 2025 he earned nearly $6,000 from these investments; and in June over $3,0000 was earned. As such, the means test filed with the court did not capture all of Debtor's income during the six-month preceding the bankruptcy filing.

- In response to question number 15 on SOFA, gambling during the past year, the Debtor was asked if he lost any money due to gambling during the one year prior to filing. The Debtor responded "No." That response was false. The Debtor did not suddenly stop gambling in October of 2024. In February of 2021 a complaint for divorce was filed by Debtor's then wife. The complaint alleged, among other things, "Husband's squandering of substantially all of the family's assets in gambling." The gambling continued prior to the Debtor filing his prior chapter 13 case, and after he filed his chapter 13 case and did not suddenly stop after the Plaintiff intervened in the Debtor's chapter 13 filing.

- On August 15, 2025 Tower Federal Credit Union (Tower FCU), one of Debtor's many creditors filed a "Motion for Reinstatement of Case." The

pleading alleged that the wage garnishment that the Tower FCU was

dismissed by Tower FCU in June of 2023 due to the Debtor filing his chapter

13 bankruptcy case and that in April of 2025 the Debtor's bankruptcy case

was dismissed. As such, the case was reinstated by the Loudoun County

Circuit Court. Thereafter, on October 3, 2025 (ten days prior to the filing of

the instant bankruptcy filing) the circuit court entered an "Order Directing

Disbursal of Funds to Plaintiff." As part of the order, the clerk of the court

was directed to have the sum of $12,134.85 presently within its possession

to be disbursed to counsel for Tower FCU. Meaning, it was incumbent on

Debtor to disclose this garnishment on SOFA number 10. In addition,

Schedules A/B do not reveal the interest that Debtor had in this sum of

money exceeding $12,000 when he filed his chapter 7 case.

### <u>Count II</u>
### Objection to discharge under 11. U.S.C. Section 727(a)(4); False Oath

12. The Plaintiff realleges and incorporates the allegations made in paragraphs

one through 11.

13.    The Debtor, knowingly and fraudulently, in or in connection with his

bankruptcy case made false oaths as they relate to his assets in schedule A/B, his

income and expenses on schedules I&J, his statement of financial affairs, and his bankruptcy petition.

14.    The foregoing false oaths (along with other false oaths that plaintiff expects to unearth during discovery) were made by the Debtor under oath. The  statements made by Debtor were false, the Debtor knew the statements were false, the Debtor made the statements with a fraudulent intent, and the statements related materially to the bankruptcy case.

15.    In light of the numerous and material false oaths made by Debtor, and in light of the fact that case law supports the finding that one material false oath is enough to deny a debtor his discharge, and given that Debtor made his false oaths with fraudulent intent, the Debtor's bankruptcy discharge should be denied.

## **CONCLUSION,**

WHEREFORE, the Plaintiff requests that this court deny the Debtor his discharge and grant such further relief as is just and proper.

/s/Robert S. Brandt

Robert S. Brandt, VSB#46196
600 Cameron Street
Alexandria, VA 22314
703-342-7330
brandt@brandtlawfirm.com
Counsel for Plaintiff